VERÓNICA BABA ROSARIO y WANDA ROSARIO DÁVILA, demandantes y recurridas, *v.* ROBERTO GONZÁLEZ FERNÁNDEZ y OTROS, demandados y peticionarios.

*Número:* CC-2002-046      *Resuelto:* 28 de junio de 2002

---

(³) Esta devolución podrá hacerse mediante el cargo de dicha cantidad a su licencia de vacaciones acumuladas.

*Roberto Llavina Calero*, abogado de la peticionaria; *Eric Pagani Padró*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Este recurso nos brinda la oportunidad de aplicar, por primera vez, la normativa establecida en *López y otros v.*

*Porrata y otros*, 156 D.P.R. 503 (2002), relativa a la responsabilidad paterna por los daños causados por los hijos menores de edad. En el caso de autos la controversia es si un padre —que no convive con su hija (a raíz del divorcio decretado entre ambos padres)— responde a tenor con el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142, por los alegados daños que la menor ocasionó mientras se encontraba en la residencia de su madre, en cuya compañía vivía.

I

Las Sras. Verónica Baba Rosario y Wanda Rosario Dávila (en adelante las demandantes) interpusieron una demanda por daños y perjuicios contra los padres de H.G.C., menor de edad, para alegar que, a tenor con el Art. 1803 del Código Civil, *supra*, éstos eran responsables vicariamente por los daños que su hija ocasionó al agredir a una de las demandantes. Específicamente, en la demanda se adujo que H.G.C. agredió a Verónica Baba Rosario, mutilándole el rostro, mientras ésta última se encontraba como invitada en la residencia de la Sra. Vivian Cruz Sánchez, madre de la referida menor.

Al momento de los hechos, la menor vivía en compañía de su madre, la señora Cruz Sánchez, quien poseía su custodia debido a que ésta y el padre de la menor, Roberto González Fernández, estaban divorciados. Sin embargo, la patria potestad era compartida por ambos padres.

Oportunamente, el señor González Fernández solicitó la desestimación de la demanda interpuesta en su contra. Alegó que, a tenor con el citado Art. 1803, no era responsable de los daños causados por su hija, porque ésta no vivía en su compañía. Tras examinar la referida solicitud, el Tribunal de Primera Instancia dictó sentencia sumaria parcial y desestimó la demanda presentada en contra del padre.

En síntesis, el aludido foro estimó que la responsabili-

dad que establece el Art. 1803 del Código Civil, *supra*, radica en los actos de los menores que viven en compañía de los padres. Por ello, y en vista de que la menor no vivía en compañía del referido progenitor, sino en compañía de la madre, el tribunal de instancia desestimó la demanda incoada en su contra. Más aún, el foro sentenciador determinó que los hechos que originaron la reclamación ocurrieron en la residencia de la madre de la menor, en donde el padre, señor González Fernández, no tiene injerencia alguna sobre las normas de conducta imperantes.

Inconformes, las demandantes acudieron al Tribunal de Circuito de Apelaciones aduciendo que erró el foro de instancia al desestimar la demanda presentada en contra del padre. Por su parte, el tribunal apelativo revocó el dictamen del foro de instancia tras concluir que el citado Art. 1803 aplicaba en vista de que el señor González Fernández ostenta la patria potestad sobre la menor.

De este dictamen recurre el señor González Fernández ante nos y arguye que procede revocar la sentencia del foro apelativo pues, según estima, la responsabilidad vicaria de los padres, establecida por el Art. 1803 del Código Civil, *supra*, se encuentra limitada a los actos de los hijos que vivan en su compañía. A raíz de esto, argumenta que no se le debe imponer responsabilidad a tenor con dicho artículo, pues no vivía con la menor al momento de ocurrir el acto dañoso.

Igualmente, indica que el mero hecho de que las demandantes, o el foro apelativo, no coincidan con el lenguaje claro del referido artículo no implica que lo procedente es que un tribunal lo "enmiende", en tanto esa tarea constitucionalmente es propia del legislador. Luego de expedir el auto solicitado y examinar las comparecencias de las partes, resolvemos.

## II

En *López y otros v. Porrata y otros*, supra, tuvimos la oportunidad de expresarnos sobre el ámbito de la responsabilidad de los padres por los actos de sus hijos, cuando éstos se encuentran separados por sentencia de divorcio. Así, al interpretar aquella disposición del Art. 1803 del Código Civil, *supra*, que dispone que "[los padres] son responsables de los perjuicios causados por los hijos menores de edad *que viven en su compañía*" (énfasis suplido), señalamos que en dichos casos responderá el progenitor con el que *convive* el menor, a menos que demuestre que empleó toda la diligencia de un buen padre de familia para prevenir el daño. De esta forma, concluimos que la "convivencia" era un requisito para la imposición de responsabilidad paterna.

En el citado caso explicamos en detalle la razón de ser del Art. 1803 del Código Civil, *supra*. De esta manera, advertimos que el referido precepto *no* establece un régimen de responsabilidad absoluta, bajo el cual se responda por el mero hecho de ser padre, sino que el mismo encuentra su fundamento en la culpa *in vigilando*. Precisamente, el Art. 1803, *supra*, presume que los padres que conviven con sus hijos son responsables de los daños que éstos producen, porque teniendo las condiciones necesarias para vigilarlos (en tanto conviven con ellos) aún así se causa un daño. En otras palabras, se presume que si se produce un daño, pudiendo vigilar al menor, es porque hubo una negligencia en tal vigilancia. Por supuesto, esta presunción de culpa *in vigilando* puede ser *rebatida* con prueba en contrario.

Es esta la explicación que guió nuestra discusión en *López y otros v. Porrata y otros*, supra, y es precisamente ésta la que sustenta nuestro razonamiento: a tenor con el citado Art. 1803, la convivencia es indispensable

para la imposición de responsabilidad paterna (la cual está basada en la culpa *in vigilando*), pues el padre que no viva con su hijo no lo puede vigilar. Por ello, señalamos:

> En la medida que el fundamento de la responsabilidad sea la culpa *in vigilando* de los propios padres, lógico será, como requisito para fijar responsabilidad, establecer la posibilidad de ejercitar este deber exigiendo la convivencia entre padres e hijos. *López y otros v. Porrata y otros*, supra, pág. 514.

▪ Al así resolver, no sólo seguimos el claro lenguaje del Art. 1803 del Código Civil, *supra*, sino que enunciamos una norma compatible con nuestro ordenamiento *vigente*. Ciertamente, los casos de padres divorciados plantean complicaciones adicionales en el ámbito de la responsabilidad paterna. Sin embargo, no por ello debemos descartar, sin más, toda una normativa bien asentada en nuestro sistema civilista. La razón de ser del Art. 1803 del Código Civil, *supra*, tiene *igual* validez y aplicabilidad tanto en casos de padres divorciados como en situaciones familiares "tradicionales". En ambos casos el fundamento de la responsabilidad impuesta por el referido Art. 1803 es la culpa *in vigilando* y bajo ésta la "convivencia" es un presupuesto de responsabilidad, pues el padre que no viva con su hijo no lo puede guardar. Es este el sistema de responsabilidad que ha fijado el legislador y es a éste a quien le compete ponderar si un sistema de responsabilidad absoluta, en el que se responda por el mero hecho de ser padre, es el que debe prevalecer.

▪ La norma de *López y otros v. Porrata y otros*, supra, *no* pretende validar la conducta de padres irresponsables ni imponer una carga sobre aquellos padres esmerados. En primer lugar, un padre esmerado y responsable podrá fácilmente librarse de responsabilidad si demuestra que, en efecto, actuó como un buen padre de familia para prevenir el daño. De otra parte, para aquellos casos de padres incumplidores e irresponsables, nuestro

ordenamiento provee las sanciones pertinentes.(¹) La solución no puede ser descartar, de plano, la normativa que emana del Art. 1803 del Código Civil, *supra*; sobre todo cuando el propio sistema provee procedimientos para atender estos casos y cuando la Constitución no exige tal proceder.

*López y otros v. Porrata y otros*, supra, sí pretende anunciar una norma a la luz del derecho aplicable y a tenor con el principio de hermenéutica de que en ausencia de una infracción constitucional, un tribunal no debe invalidar un estatuto por el mero hecho de que discrepe del juicio valorativo de las esferas representativas de nuestra sociedad o porque estime que, a su juicio, el bien común sería mejor atendido si se descarta el mandato legislativo.

De hecho, la normativa que sirve de guía en *López y otros v. Porrata y otros*, supra, no es nueva. Ésta es cónsona con nuestra jurisprudencia interpretativa, la cual ha precisado que la convivencia es un presupuesto de responsabilidad a tenor con el Art. 1803 del Código Civil, *supra*, al punto de eximir de responsabilidad a aquellos padres que no convivían con sus hijos.(²) En *López y otros v. Porrata y otros*, supra, meramente aplicamos una norma bien asentada a una realidad de la vida social moderna, no sin antes estudiar a fondo las implicaciones y la razón de ser de ésta. Así, incorporamos lo que se conoce como la "teoría del traspaso de responsabilidad", la cual sostiene que la responsabilidad se traspasa con el menor y responde el padre que lo tenga en el momento de la comisión del acto culposo. Por ello, explicamos que el Art. 1803, *supra*, responsabiliza al padre que tenga al menor en su compañía en

---

(¹) Véase, por ejemplo, los Arts. 158 y 159 del Código Penal, 33 L.P.R.A. secs. 4241 y 4242, sobre incumplimiento de la obligación alimentaria y el abandono de menores, respectivamente.

(²) Véanse, por ejemplo: *Rodríguez v. Santos*, 40 D.P.R. 48 (1929); *Pacheco v. Pomales*, 55 D.P.R. 341 (1939).

el momento que se produzca el daño, pues sólo éste es quien posee las condiciones para vigilar al hijo.

Aunque la norma elaborada en *López y otros v. Porrata y otros*, supra, tiene la ventaja de ser sumamente sencilla, en dicho caso advertimos que habrá que atender las *circunstancias de hecho* de cada caso para determinar con cuál padre convivía el menor. Por ello, la norma enunciada *no* se reduce a responsabilizar automáticamente a aquel padre que tenga la custodia a tenor con un decreto judicial.

▪ De esta forma, para determinar con cuál padre convivía un menor al ocurrir el daño, será necesario atender las circunstancias de hecho de cada caso. La "convivencia" no se deriva mecánicamente de lo dispuesto en un decreto judicial de custodia, pues lo determinante no será, necesariamente, la realidad *de jure* sino las circunstancias fácticas del caso. Así, por ejemplo, si el régimen de visitas se amplía al margen de la sentencia judicial, por acuerdo tácito entre las partes, será responsable el progenitor con quien esté el menor en un momento determinado según las circunstancias de hecho.(³) Por supuesto, esto no significa que el dictamen de custodia sea irrelevante en estos casos, pues seguramente será pertinente, aunque no concluyente, para determinar con cuál padre convivía el menor cuando produjo el daño.

▪ De otra parte, debe tenerse presente que aunque la determinación de la "convivencia" es una cuestión de hecho, esto no implica que un padre puede liberarse de responsabilidad abandonando a su hijo. En *López y otros v. Porrata y otros*, supra, expresamente advertimos que lo importante, al producirse una falta de convivencia, será

---

(³) M. Navarro Michel, *La responsabilidad civil de los padres por los hechos de sus hijos*, Barcelona, Ed. Bosch, 1998, pág. 73.

examinar las causas que la motivaron, de suerte que se dilucide si su ausencia fue *legítima*.(⁴)

Ahora bien, debe quedar claro que *López y otros v. Porrata y otros*, supra, no sugiere que el padre custodio siempre responderá por los daños de sus hijos menores de edad. En dicho caso reiteramos que el padre no custodio responderá cuando tenga al menor en su compañía; lo que ocurriría, por ejemplo, cuando ejerza el derecho de visita sobre el menor. La norma es neutral: responde el padre en cuya compañía viva el menor cuando ocurra el daño; sea el custodio o el no custodio. Ciertamente, es posible que el padre custodio responda con mayor frecuencia, pues *de ordinario* tendrá al menor en su *compañía*. Sin embargo, igual resultado se produciría si el padre no custodio es quien se relaciona con mayor frecuencia con el menor. En ambos casos, sin embargo, el presupuesto de responsabilidad es la convivencia (a tenor con las circunstancias fácticas del caso) y no la custodia *de jure* a tenor con un decreto judicial.

Obviamente, la norma sentada en *López y otros v. Porrata y otros*, supra, no es una sanción por relacionarse con un hijo. Ésta meramente establece lo que es harto conocido: quien convive con el menor cuenta con los elementos necesarios para vigilarlo. El Art. 1803 del Código Civil, *supra*, cónsono con esto, presume controvertiblemente que si se produce un daño es porque ha habido negligencia en la vigilancia del menor.

En fin, a tenor con los parámetros esbozados *López y otros v. Porrata y otros*, supra, en este tipo de casos procede determinar, en primer lugar, con quién convivía el menor al cometer el daño. Una vez determinada la convivencia, procede liberar al progenitor con quien no convivía el menor (si este es el caso) y responsabilizar al otro padre, a

---

(⁴) C. López Beltrán de Heredia, *La responsabilidad civil de los padres por los hechos de sus hijos*, Madrid, Ed. Tecnos, 1988, pág. 75.

menos que éste demuestre, a tenor con el Art. 1803, que empleó "toda la diligencia de un buen padre de familia para prevenir el daño". *López y otros v. Porrata y otros*, supra, pág. 515, citando el Art. 1803 del Código Civil, *supra*.

A la luz de esta normativa, pasemos a discutir la controversia que tenemos ante nos.

## III

De los autos se desprende que la menor *no* convivía con su padre al momento de cometer el acto dañoso. Por el contrario, se estableció que dicha menor *convivía con su madre*, la señora Cruz Sánchez. Más aún, el foro de instancia determinó que los hechos imputados ocurrieron, precisamente, en la residencia de la madre.

Por ello, no es difícil advertir en el caso de autos que sencillamente padre e hija no conviven juntos, por lo cual el padre *no* tiene control alguno sobre las actuaciones de su hija. Es más, los hechos de este caso ejemplifican la razón de ser de la normativa del citado Art. 1803; la "convivencia" es indispensable para la imposición de responsabilidad paterna (la cual está basada en la culpa *in vigilando*), pues el padre que no viva con su hijo no lo puede guardar.[5]

Ciertamente, resulta difícil comprender cómo un padre que no convive con su hijo, por razón de un dictamen judicial a esos efectos, puede controlar los actos que su hijo realice mientras convive con el otro progenitor; actos que precisamente se realizan en la residencia del otro padre sobre los cuales no se tiene ningún control o injerencia.

Debe advertirse que en el caso de autos la madre, la señora Cruz Sánchez, era quien tenía la facultad para supervisar no sólo el comportamiento de su hija que convivía con ella, sino las actividades que se celebraran en su

---

[5] Véase L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 4ta ed., Madrid, Ed. Tecnos, 1986, Vol. II, pág. 645.

residencia. Imponer tal responsabilidad al padre, señor González Fernández, no sólo atentaría contra el claro lenguaje del Art. 1803 del Código Civil, *supra*, sino que sería, además, un acto fútil, equivalente a la imposición de una responsabilidad absoluta en tanto éste no tiene ninguna manera de controlar las actividades que se realizan en una residencia ajena.

A través del Art. 1803 del Código Civil, *supra*, se presume que se ha incurrido en culpa *in vigilando*, pues, precisamente, el padre que *convive* con el hijo es quien tiene los elementos que le permiten ejercitar el deber de vigilancia. Como dictaminó el tribunal de instancia tras examinar la prueba documental ante sí, el menor necesariamente debe vivir en la compañía del padre, pues esto es una condición indispensable para que el padre pueda ejercer su autoridad. El caso de autos es el *mejor ejemplo* para sustentar la norma del citado Art. 1803; el deber de vigilancia requiere las condiciones necesarias para regir, corregir y aconsejar al menor en tanto estas obligaciones no se pueden satisfacer a distancia y sin el control del menor. No debemos olvidar que la culpa *in vigilando* se refiere a la negligencia en el control del comportamiento de los hijos, la cual requiere, para ser efectiva, la "convivencia" como posibilidad del ejercicio del deber de vigilar. *López y otros v. Porrata y otros*, supra.

En vista de lo anterior, y a la luz de la norma sentada en *López y otros v. Porrata y otros*, supra, procedía liberar de responsabilidad al señor González Fernández y fijarla en el otro progenitor, la señora Cruz Sánchez, *a no ser que ésta demuestre, a tenor con el Art. 1803,* supra, *que empleó toda la diligencia de un buen padre de familia para prevenir el daño.*

Este no fue el curso de acción seguido por el foro apelativo, pues al disponer del recurso presentado no tuvo el beneficio de nuestras expresiones en *López y otros v. Porrata y otros*, supra. Por ende, a la luz de lo allí pautado,

procede revocar el dictamen del tribunal apelativo y devolver el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme lo aquí resuelto.

*Se dictará la sentencia correspondiente.*

La Juez Asociada Señora Naveira de Rodón emitió una opinión disidente, a la que se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón, a la cual se une el Juez Presidente Señor Andréu García.

Disentimos de la decisión a la cual llega la mayoría en este caso, pues ésta reitera el errado y anacrónico criterio que recientemente adoptó el Tribunal en *López y otros v. Porrata y otros*, 156 D.P.R. 503 (2002). Repite el Tribunal el erróneo razonamiento que tiene el efecto de imponerle la responsabilidad *in vigilando* por los actos negligentes del menor al padre o madre custodio, aun cuando ambos padres compartan la patria potestad sobre el menor que ha cometido el acto culposo.

Así pues, el Tribunal reitera una norma que ha convertido el hecho de la tenencia física del menor en determinado momento —lo cual puede ser un asunto meramente incidental— en un criterio de mayor peso e importancia que los deberes que tienen tanto el padre como la madre por ostentar la patria potestad sobre sus hijos. Esto no solamente ha sido un paso retrógrada en nuestro derecho de familia, sino que también es contrario a lo que reiteradamente establecieron durante años nuestros precedentes, de acuerdo con los cardinales principios de política pública relacionados a la institución de la patria potestad.

# I

Hemos establecido que la patria potestad comprende el conjunto de derechos y deberes más amplio que tienen los padres respecto a la persona y los bienes de sus hijos no emancipados, entre los cuales se encuentra *el deber de convivir con los hijos*, alimentarlos en su mesa, educarlos, *guiarlos* y representarlos. Véanse: *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. 492 (2000); *Torres, Ex parte*, 118 D.P.R. 469, 473 (1987). También ha sido definida como "el poder que [el ordenamiento jurídico reconoce] a los progenitores sobre los hijos menores no emancipados, para el cumplimiento de los deberes de alimentación, educación e instrucción".[1]

Así, en *Soto Cabral v. E.L.A.*, 138 D.P.R. 298, 323 (1995), señalamos cuatro características esenciales de la patria potestad: (1) es imprescriptible, porque el no uso o el abandono podrá imponer sanciones al padre, pero no lo libera de sus funciones de padre con relación a los hijos; (2) intransferible, porque el padre o la madre no pueden voluntariamente ceder esos deberes fundamentales de la vida familiar a nadie en virtud de ninguna razón; (3) inalienable, porque a nadie se le puede traspasar por ningún concepto o motivo, ni por ningún interés, y, por último, (4) irrenunciable (excepto en aquellos casos de adopción dispuestos por ley para beneficio del menor).

Dada la importancia que le da nuestro ordenamiento jurídico a la institución de la patria potestad, es en virtud de ésta que se ejerce el derecho a tomar todas las decisiones fundamentales con respecto a la crianza y educación de los hijos, y cuáles serán las normas sociales, morales y religiosas bajo las que éstos crecerán. También surge de la patria potestad el derecho de los padres a disfrutar del

---

[1] J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosh, 1990, T. V, pág. 245.

usufructo de los bienes de sus hijos menores de edad,[2] a consentir al matrimonio y la emancipación de éstos.

Por otra parte, la custodia consiste en la tenencia o control físico que tiene un progenitor sobre sus hijos. No obstante, hemos establecido que

> ... "los aspectos de custodia de menores *no son en estricta lógica separables de la patria potestad*". En realidad, la custodia es un *componente* de la patria potestad, *pues ésta impone a los padres el deber primario de tener sus hijos no emancipados en su compañía.* Ello implica, como norma general, que aquel que ostente la patria potestad también tiene la custodia. [Sin embargo] *su ejercicio no necesariamente significa que tiene que tenerlos en su compañía.* La doctrina admite, ante circunstancias aconsejables y necesarias para el bienestar del menor, el alejamiento del que ostenta la patria potestad." (Citas y escolios omitidos, y énfasis suplido.) *Torres, Ex parte*, supra, págs. 476–477.

Se desprende claramente de lo que hemos expuesto que los deberes y las responsabilidades de los padres con respecto a sus hijos menores, incluso la tenencia física de éstos, no surgen del hecho de la custodia, sino del hecho de ostentar la patria potestad sobre el menor. La custodia es tan sólo un ingrediente de la patria potestad, que si bien *facilita* el control y la responsabilidad de velar por los actos del menor en un momento determinado, no determina la autoridad del padre o la madre para ejercer dicho control y asumir dichas responsabilidades, sino que ésta surge del conjunto de derechos y deberes que otorga e impone la patria potestad.

Este Tribunal ha reconocido, no obstante, que cuando ocurre el divorcio, una de las áreas de mayor conflicto es el establecimiento de las relaciones paterno y materno filiales con los hijos menores de edad. En *Sterzinger v. Ramírez*, 116 D.P.R. 762, 773 (1985), señalamos que

> [c]uando el tribunal le otorga la custodia a un padre y concede derecho de visita al otro, esto automáticamente tiene un

---

[2] *Rodríguez Mejías v. E.L.A.*, 122 D.P.R. 832 (1988).

efecto real sobre las relaciones del progenitor no custodio con el menor. El padre no custodio pierde cierta autoridad real sobre los hijos, que antes compartía con el ex cónyuge, desaparece la libertad de compartir y disfrutar con ellos en cualquier momento que desee. A medida que los patrones familiares han cambiado en nuestro país y los padres comparten más el cuidado de sus hijos y las tareas en el hogar, más profundo resulta el impacto de la separación para el progenitor no custodio como para los hijos.

Precisamente por esta razón es que el ordenamiento jurídico debe ir dirigido a proteger la relación entre el padre o madre no custodio y sus hijos menores de edad, máxime cuando dicho padre o madre no custodio sigue ostentando la patria potestad sobre los menores. Si bien puede ser cierto que el padre o madre no custodio pierde hasta determinado punto contacto con el menor, esta situación no debe ser óbice ni justifica que el ordenamiento releve al padre no custodio o que no tiene al menor en su compañía al momento de ocurrir el acto dañoso de responsabilidad civil por incumplimiento con su responsabilidad *in vigilando* sólo porque, según un decreto de custodia, el menor pasa la mayor parte de tiempo con el otro padre. En primer lugar, lejos de fortalecer la relación del menor con el padre o madre no custodio, este "relevo de responsabilidad" contribuye a debilitar aún más la relación del hijo con ese padre o madre que no tiene al menor en su compañía la mayor parte del tiempo; éste, al no sentirse responsable por vigilar al menor y prevenir sus actos negligentes, tendrá aún menos incentivos para atenderlo y guiarlo, tal como lo exige la patria potestad.

En segundo lugar, aunque la custodia compartida luego del divorcio es la situación ideal en aras de mantener ciertos elementos de unidad familiar, lo cierto es que un arreglo a estos efectos no siempre es posible por un sinnúmero de razones, desde la tirantez de la relación entre los padres divorciados, que el propio tribunal haya determinado que el bienestar de los menores está con uno de ambos padres, o simplemente que el padre y la madre hayan decidido que

los menores vivirán con uno u otro padre por el hecho de que el hogar de éste está más cercano al lugar donde los niños van a la escuela o al centro de cuidado diurno al que asisten, o que el horario de trabajo de ese padre o esa madre es más flexible que el del otro.

Como se puede apreciar, la determinación sobre cuál de los dos padres tendrá la custodia de un menor puede obedecer a múltiples factores y circunstancias extrínsecas que no necesariamente están relacionadas con los deberes fundamentales que emanan de la patria potestad. Es en ese contexto que se debe examinar la responsabilidad de los padres por los actos negligentes del hijo menor de edad que establece el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142.

## II

La responsabilidad de los padres que surge del Art. 1803 del Código Civil, *supra*, se fundamenta en la culpa y negligencia de éstos y no en la de los hijos. Dicha responsabilidad es de carácter primario y no secundario. "Esa culpa o negligencia de los padres guarda relación con su deber de vigilancia sobre los hijos menores de edad que vivan en su compañía, de imponer la debida disciplina sobre sus hijos y de suministrarles una educación y un ambiente adecuado." *Cruz v. Rivera*, 73 D.P.R. 682, 686 (1952). Véase *Sociedad de Gananciales, etc. v. Cruz*, 78 D.P.R. 349, 359 (1955). Así pues,

> ... [l]os padres no son garantizadores *sine qua non* de las actuaciones de sus hijos; sino que *cada caso específico debe medirse por sus circunstancias especiales*, y los hechos de cada caso deben ser considerados a los fines de determinar si hubo o no hubo negligencia de parte de los padres, en cuanto a si las actuaciones del hijo se deben al incumplimiento por parte del padre de su deber de vigilancia, represión, disciplina y educación. *Cruz v. Rivera*, supra, pág. 689.

Es importante destacar que en estos casos no es necesa-

rio probar la culpa o negligencia de los padres, sino que son éstos los que tienen que probar que no incurrieron en culpa o negligencia para así eximirse de responsabilidad. O sea, el Art. 1803 del Código Civil, *supra*, crea una especie de presunción de negligencia por parte de los padres, y para liberarse de su responsabilidad es necesario probar, no que el menor no incurrió en negligencia, sino que el padre o madre cumplió con su responsabilidad *in vigilando*; es decir, que fue prudente en el ejercicio de control sobre el menor o que actuó como un buen padre de familia para evitar la conducta negligente del hijo.

La razón de ser de este caso especial en el cual el Código Civil presume la existencia de negligencia por parte de los padres es que éstos tienen un deber de vigilancia y control sobre los hijos. La pregunta crucial que debemos hacernos es la siguiente: ¿De dónde emana ese deber? La respuesta del ordenamiento jurídico a esta crucial interrogante es sorprendentemente sencilla, pero categórica: ese deber emana del ejercicio de la patria potestad sobre los hijos. ¿Se extingue automáticamente ese deber sólo porque uno de los padres tenga al menor en su compañía al momento de ocurrir el acto culposo? Tenemos que contestar en la negativa, sencillamente porque está más que establecido que el padre o madre que retiene la patria potestad también retiene la responsabilidad por vigilarlo y contribuir a prevenir que éste pueda causar daños con su conducta a otros. Resulta claro que la respuesta sobre a quién le corresponde la responsabilidad que impone el Art. 1803 del Código Civil, *supra*, cuando el padre o la madre del menor no cumplen con su responsabilidad *in vigilando* no hay que buscarla en complicadas doctrinas sobre el derecho de daños y perjuicios, sino en principios básicos de nuestro ordenamiento jurídico, los cuales se fundamentan en una clara política pública de fortalecer la institución de la familia.

Así, pues, entendemos que es erróneo el utilizar el criterio de quién ostenta la custodia o tenencia física del me-

nor en un momento dado como agente determinante para imponer responsabilidad bajo el Art. 1803 del Código Civil, *supra.* La responsabilidad de los padres por los hijos menores que viven en su compañía emana de los deberes inherentes a la patria potestad, no a la custodia, que no es sino un atributo o una manifestación de la primera.

Lo anterior, sin embargo, no significa que el padre o la madre no custodio —o que no tenía al menor consigo en el momento del daño— no tendrá la oportunidad de establecer ante el foro correspondiente que éste efectivamente cumplió con su deber *in vigilando*, o que en su caso en particular, debido a que no ostenta la custodia del menor o no lo tenía consigo, dicha responsabilidad *in vigilando* no debe exigírsele aun cuando ostente la patria potestad. Lógicamente, el padre o la madre que tiene al menor en su compañía en un momento determinado tiene más control sobre los actos de éste que el padre o la madre que no está presente en ese momento. Este es un factor que el tribunal puede y debe tomar en consideración al decidir sobre el incumplimiento con el deber de vigilancia del padre o la madre. Lo que no debe ocurrir es que el hecho incidental de la tenencia física del menor sea un eximente automático de responsabilidad para el otro padre o madre, obviando el hecho de que éste sigue ostentando la patria potestad sobre dicho menor, la cual, según hemos establecido, *se ejerce integralmente y no como un conjunto de derechos y deberes individuales e independientes. Soto Cabral v. E.L.A*, supra, pág. 323. Así pues, no se puede ejercer la patria potestad para abrogarse un derecho de injerencia en las decisiones concernientes a la crianza, educación, administración y el derecho al disfrute de los bienes de los hijos, y no asumir la correlativa responsabilidad que dichas facultades conllevan.

Nos preocupa, además, el hecho de que, en términos prácticos, imponer responsabilidad por negligencia por el

hecho físico de la custodia o tenencia del menor conllevará grandes problemas para los litigantes en el futuro. Nos surgen preguntas tales como: ¿Qué pasará cuando por algún arreglo entre los padres, el menor se encuentre en determinado momento con uno de éstos, cuando según los arreglos consignados en el Tribunal se supone que estuviese con el otro padre? ¿Qué pasará cuando sean los abuelos, quienes muchas veces cuidan de sus nietos menores de edad, aun cuando la custodia oficial le corresponde al hijo o hija de éstos, *los que tengan al menor en su compañía* al momento de ocurrir el acto culposo? ¿A quién se le impondrá la responsabilidad cuando los padres aún no estén divorciados, sino separados, y no exista un acuerdo decretado por el tribunal sobre la custodia del menor, aunque como cuestión de realidad dicho menor esté viviendo con uno de los dos padres? ¿Cuál será el criterio para imponer responsabilidad bajo el Art. 1803 en casos en que el menor no esté bajo la custodia física de ninguno de los dos padres?

Podríamos seguir enumerando preguntas que no encontrarán una respuesta lógica en el ordenamiento, de empeñarse el Tribunal en seguir la irrazonable norma que ha creado. El hecho de la tenencia física del menor no puede ser el criterio para imponer responsabilidad al padre o a la madre bajo el Art. 1803 del Código Civil, *supra*. La custodia sobre un menor es un arreglo que tiene que hacer el Tribunal en los casos de divorcio por el sencillo hecho de que el niño o la niña no puede estar en dos lugares al mismo tiempo, y esa es una realidad física que no debe afectar más de lo estrictamente necesario la responsabilidad del padre y de la madre cuando ambos ostentan la patria potestad. Consideramos que es urgente que el Tribunal examine los efectos reales de la norma que insiste en sostener, ya que, en lugar de fomentar que luego del divorcio ambos padres continúen involucrados en la vida de sus hijos, estamos fomentando la mayor ruptura del núcleo familiar, pilar de la sociedad puertorriqueña.

## III

Por todos estos fundamentos, disentimos del criterio mayoritario. En consecuencia, confirmaríamos el dictamen del Tribunal de Circuito de Apelaciones y devolveríamos el caso para la continuación de los procedimientos en conformidad.