ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SARAH GREENE, por sí, y junto a MICHAEL FLAHERTY, en representación del hijo menor de ambos, M.G.F.<br><br>Apelantes<br><br>v.<br><br>LUCIO BIASE, MONIKA GILMORE Y MAPFRE PRAICO INSURANCE COMPANY<br><br>Apelados<br>_____<br><br>LUCIO BIASE<br><br>Recurrido<br><br>v.<br><br>MACDARA G. FLAHERTY; MICHAEL F. FLAHERTY; SARAH GREENE; ET AL.<br><br>Peticionarios<br>_____<br><br>SARAH GREENE, por sí, y junto a MICHAEL FLAHERTY, en representación del hijo menor de ambos, M.G.F.<br><br>Peticionarios<br><br>v.<br><br>LUCIO BIASE, MONIKA GILMORE Y MAPFRE PRAICO INSURANCE COMPANY<br><br>Recurridos | KLAN202400916<br><br><br><br><br><br><br><br><br><br>CONSOLIDADO<br>CON:<br><br><br><br><br><br>KLCE202401110<br><br><br><br><br><br><br><br>KLCE202500318 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2023CV04757<br><br>Consolidado con: SJ2023CV10926<br><br>Sobre: Acometimiento o Agresión; Libelo; Calumnia o Difamación |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

_____

[1] Mediante la Orden Administrativa OATA-2025-013 emitida el 6 de febrero de 2025, se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Camille Rivera Pérez.

Número Identificador
SEN2025_____

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de octubre de 2025.

Compareció la Sra. Sarah Greene (en adelante, "señora Greene"), el Sr. Michael Flaherty (en adelante, "señor Flaherty") y el Sr. Macdara Greennough Flaherty (en adelante, "señor Macdara") mediante el recurso KLAN202400916 presentado el 15 de octubre de 2024. En síntesis, solicitaron la revocación de una *Sentencia Parcial* emitida el 20 de junio de 2024, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, "foro primario"). En el aludido dictamen, el foro primario de Bayamón desestimó demanda de difamación bajo la Regla 10.2(5) de Procedimiento Civil, *infra.*

El mismo día, 15 de octubre de 2024, el señor Flaherty presentó el recurso KLCE202401110. Allí solicitó la revocación de la *Resolución y Orden* emitida el 20 de junio de 2024, notificada al día siguiente por el foro primario. En esta, el foro primario denegó desestimar la causa de acción contra el señor Flaherty, ya que determinó que tanto la señora Greene como el señor Flaherty tenían la custodia inmediata del señor Macdara al momento de los hechos y eran responsables de los daños ocasionados por este último.

De igual manera, el 28 de marzo de 2025, el señor Flaherty presentó el recurso KLCE202500318. Nos solicitó la revocación de la *Resolución* emitida y notificada el 17 de enero de 2025 por el foro primario. En el referido dictamen, el foro primario denegó una solicitud de sentencia sumaria parcial en la cual incluyó unos hechos y conclusiones alegadamente incorrectos.

Por recurrir de un pleito consolidado en el foro primario, ordenamos previamente la consolidación de los tres (3) recursos presentados por separado. Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia Parcial* apelada en el recurso KLAN20240916. En cambio, **se expide** el auto de *Certiorari* número

KLCE20241110 y **se revoca** la resolución recurrida. En cuanto al recurso número KLCE20250318, **se deniega** su expedición.

**-I-**

El caso de epígrafe tuvo su génesis mediante la presentación de dos causas de acción instadas de manera separada en el Tribunal de Primera Instancia, las cuales fueron identificadas con los alfanuméricos siguientes: (i) BY2023CV04757 y (ii) SJ2023CV10926. A continuación, relatamos los hechos procesales de cada caso individualmente. Veamos.

**A. Caso Núm. BY2023CV04757**

El 28 de agosto de 2023, la señora Greene, por sí, y el señor Flaherty —ambos en representación de su hijo menor de edad, el señor Macdara— instaron una *Demanda*[2] sobre difamación, identificada como BY2023CV04757, contra el Sr. Lucio Biase (en adelante, "señor Biase") y su prometida, la Sra. Monika Gilmore (en adelante, "señora Gilmore"), y Mapfre Praico Insurance Company (en adelante, "Mapfre"). Allí alegaron que, tras la liquidación de la sociedad legal de gananciales habida entre ellos, la señora Greene advino a ser la única dueña del inmueble sito en 357 Dorado Beach East, el cual fue vendido al señor Biase en el mes de febrero del 2022. En cuanto al señor Macdara, sostuvieron que se trasladó al estado de California a cursar estudios universitarios en el mes de julio de 2022 y regresó a Puerto Rico durante el receso de acción de gracias en el mes de noviembre de 2022. Narraron que, el 25 de noviembre de 2025, el señor Macdara caminaba desde el Restaurante Melao hacia la casa de una amiga en Dorado Beach East y este "se desorientó debido al estado de intoxicación en que se encontraba, desvió su camino y, por error, forzó su entrada a 357 Dorado Beach a todas luces pensando que todavía residía en ese

---

[2] Apéndice del recurso KLAN20240916, anejo 5, págs. 33-38.

lugar".[3] Por tal incidente, alegaron que el señor Biase y la señora Gilmore emprendieron una campaña de difamación en la comunidad de Dorado Beach contra el señor Macdara y la señora Greene consistente en expresión públicas como las siguientes:

a. M.G.F era un merodeador que pululaba por la urbanización desde el mes de septiembre de 2022, sembrando el pánico y el terror entre vecinos;
b. M.G.F. intentó violar a Gilmore en la noche de los hechos;
c. M.G.F. era un criminal peligroso que debía ser encarcelado y su entrada a Dorado Beach East debería ser prohibida; y
d. Greene había criado un monstruo.[4]

Por lo cual, reclamaron una compensación económica por los daños que sufrieron.

En consecuencia, el 3 de noviembre de 2023, Mapfre instó *Contestación a la demanda y reconvención.*[5] Argumentó que los daños a la propiedad del señor Biase fueron el resultado de los actos voluntarios ilegales y negligentes del señor Macdara. Por lo cual, sostuvo que este último debe responder por tales daños de manera mancomunada o solidariamente y reembolsar el pago de $10,885.00 efectuado por Mapfre al señor Biase.

Luego, el 9 de febrero de 2024, el señor Biase y la señora Gilmore presentaron su *Contestación a Demanda y Reconvención.*[6] Allí, alegaron que, al momento del incidente, el señor Macdara contaba con 20 años de edad y sus progenitores — la señora Greene y el señor Flaherty— compartían su patria potestad y custodia. Además, señalaron que el señor Macdara irrumpió en la propiedad del señor Biase de forma violenta, temeraria y criminal. Adujeron que, por tales actos, la señora Gilmore estuvo en peligro real de ser agredida verbal, física y sexualmente por el señor Macdara. Asimismo, señalaron que, por tales actos en un caso criminal, el señor Macdara fue encontrado culpable por la comisión de los

---

[3] *Id.*, págs. 34-35.
[4] *Id.*, pág. 35.
[5] *Id.*, anejo 9, págs. 47-67.
[6] *Id.*, anejo 13, págs. 82-100.

delitos de agresión, violación de morada, daño agravado y alteración a la paz. A su vez, negaron haber realizado una campaña de difamación en contra del señor Macdara y la señora Greene; y argumentaron que, en todo caso, fueron ellos quienes emprendieron una campaña de difamación en su contra.

Posteriormente, el 19 de abril de 2024, el señor Biase y la señora Gilmore presentaron *Moción solicitando desestimación de la demanda y para otros fines*.[7] Argumentó que, la *Demanda* sobre difamación era un intento de intimidarlos para evitar la convicción del señor Macdara en el caso criminal. Además, alegaron que la referida *Demanda* está basada en conjeturas y conclusiones, ausente de hechos demostrativos meritorios de algún remedio. En particular, adujeron que no contiene hechos específicos atribuibles al señor Biase y la señora Gilmore.

El 13 de mayo de 2025, la señora Greene instó su *Oposición a "Moción solicitando desestimación de la demanda y para otros fines"*.[8] Alegaron que la *Demanda* contiene alegaciones sencillas y sucintas en cumplimiento con la Regla 6.1 de Procedimiento Civil. Además, señaló que conforme al estándar refrendado en *Costa Elena y otros v. Magic Sport y otros*, 213 DPR 523 (2024), el Tribunal debe adjudicar los hechos bien alegados como ciertos para propósito de adjudicar que los mismos establecen una reclamación plausible de difamación. Por otra parte, sostuvo que la solicitud de desestimación carece de fundamentos para establecer que lo aseverado en la Demanda, no configura una difamación.

Así las cosas, el foro primario emitió el 20 de junio de 2024, notificada al día siguiente, una *Sentencia Parcial* mediante la cual

---

[7] *Id.*, anejo 25, págs. 140-145.
[8] *Id.*, anejo 30, págs. 159-164.

desestimó con perjuicio la *Demanda*.[9] En particular, razonó como sigue:

> Aún, tomando como ciertas las alegaciones de la demanda, como vemos, no hay duda de que algunas de las expresiones que supuestamente realizaron los demandados no pueden considerarse difamatorias [...][10]
>
> .    .    .    .    .    .    .    .
>
> En resumen, el supuesto acto difamatorio no es más que un comentario general, sin especificidad, bajo las circunstancias que dan pie a que la señora Gilmore y su pareja el señor Biase hagan cometarios como los alegados sin que esto constituya una acción difamatoria. Más aun, según se describe en la demanda, Macdara realmente, al parecer, no puede testificar sobre lo ocurrido, pues según se le intenta defender en la demanda, él estaba tan intoxicado que ni siquiera recordaba, no solo que ya no vivía en la propiedad a la que forzó la entrada, sino en la Urbanización que ocurrieron los hechos, Dorado Beach East. Por lo tanto, las alegaciones de la demanda, sobre las supuestas expresiones difamatorias hechas por los señores Biase y Gilmore, y tomando en cuenta las acciones reconocidas por Macdara, estas debieron presentarse de manera mucho más específicas y no meramente una generalidad, que da pie a creer que realmente no se hicieron o que de haberse hecho, están basadas en la realidad de lo ocurrido.[11]
>
> .    .    .    .    .    .    .    .
>
> La acción difamatoria debe ser una que realmente cause daño y no un mero cometario que moleste a la parte contra la que se realizó. Además, la prueba habla por sí misma, no es normal ni aceptable que un menor se intoxique y entre a una propiedad ajena, destruyendo parte de la propiedad e interrumpiendo la paz de los residentes.
> C[ó]mo la comunidad describe o percibió los actos realizados por Macdara, en efe[c]to, es culpa exclusiva de este, pues fue este quien actuó indebidamente.[12]

El 5 de julio de 2024, el señor Flaherty presentó *Moción de reconsideración* en la que alegó que el foro primario utilizó un estándar equivocado al pasar juicio sobre una solicitud de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, *infra*, y formuló conclusiones de hechos que no encuentran apoyo en las alegaciones de la *Demanda*.[13]

El 8 de julio de 2024, la señora Greene instó una *Moción solicitando reconsideración*, mediante la cual sostuvo que, el foro primario erró al requerirle un estándar de especificidad en sus alegaciones no contemplado por la jurisprudencia aplicable.[14]

---

[9] *Id.*, anejo 1, págs. 1-18.
[10] *Id.*, pág. 15.
[11] *Id.*, págs. 16-17.
[12] *Id.*, pág. 17.
[13] *Id.*, anejo 2, págs. 19-23
[14] *Id.*, anejo 3, págs. 24-29.

En igual fecha, 8 de julio de 2025, el señor Macdara presentó *Moción adoptando por referencia la moción de reconsideración.*[15] En esta, adopto la solicitud de reconsideración del señor Flaherty. Alegó que el foro primario se equivocó al usar el estándar de plausibilidad para evaluar la moción de desestimación y señaló que el estándar vigente en nuestra jurisdicción era el adoptado en *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497 (1994).

Ante esto, el 13 de septiembre de 2024, el foro primario emitió y notificó *Resolución* en la cual denegó las solicitudes de reconsideración.[16]

### B. Caso Núm. SJ2023CV10926

El 22 de noviembre de 2023, el señor Biase presentó *Demanda*[17] sobre daños y perjuicios —identificada como SJ2023CV10926— contra la señora Greene, el señor Flaherty, el señor Macdara y otros. Narró que, el 25 de noviembre de 2022, el señor Macdara se encontraba en el Restaurante Melao by Mario Pagan —ubicado en Dorado Beach— celebrando su cumpleaños número 20 junto a su madre, la señora Greene. Argumentó que, debido al estado de embriaguez e intoxicación por bebidas alcohólicas, el señor Macdara irrumpió en su residencia —localizada en Dorado Beach— gritando y cometiendo actos violentos contra la propiedad y la Sra. Monika Gilmore, la entonces novia del señor Biase. Por lo cual, alegó que sufrió daños a raíz de los hechos provocados por el señor Macdara.

El 19 de abril de 2024, el señor Flaherty instó *Moción en solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil.*[18] Adujo que, conforme a la jurisprudencia sobre la responsabilidad vicaria, no era responsable de los daños

---

[15] *Id.*, anejo 31, págs. 165-166.
[16] *Id.*, anejo 4, págs. 30-32.
[17] Apéndice del recurso KLCE20241110, anejo 3, págs. 13-27.
[18] *Id.*, anejo 4, págs. 28-39.

causados por su hijo —el señor Macdara— ya que no era el progenitor que ostentaba su custodia física inmediata al momento de los hechos. Por lo cual, sostuvo que procedía la desestimación de la *Demanda* instada en su contra, debido a que el señor Biase no tiene una causa de acción que justifique la concesión de un remedio.

Por su parte, el 24 de mayo de 2024, el señor Biase presentó *Moción en oposición a la "Moción en solicitud de desestimación al amparo de la Regla 10.2 de Procedimiento Civil" [SUMAC 48].*[19] Alegó que la señora Greene y el señor Flaherty eran responsables por los daños ocasionados por su hijo menor de edad, no emancipado —el señor Macdara—, toda vez que este último convivía con ambos progenitores por razón de la custodia compartida que ostentaban sobre él. Sostuvo, además, que el señor Flaherty no demostró haber ejercido la diligencia propia de una persona razonablemente prudente para poder eximido de responsabilidad.

Ante esto, el foro primario emitió el 20 de junio de 2024, notificada al día siguiente, una *Resolución y Orden* mediante la cual denegó la solicitud de desestimación solicitada por el señor Flaherty.[20] El foro primario razonó como sigue:

> […] luego de examinar los hechos queda más que claro que el día de los hechos, al menos, por la mañana, el menor se encontraba con el señor Flaherty. También, que el menor pernoctó en casa del señor Flaherty el día anterior y que solo estuvo con su madre para compartir en un restaurante. Cuando el incidente ocurrió, también, el señor Flaherty fue al CDT de Dorado, por lo que queda claro que este codemandado tenía la custodia inmediata del menor junto con la señora Greene. Más aun, de los hechos surge que el problema de alcoholismo que, al parecer, tiene Macdara y que es la causa inmediata del incidente, comenzó cuando el señor Flaherty estaba casado con la señora Greene, y Macdara tenía 14 años y ninguno de estos demandados logró controlar dicho problema, e, incluso, aún no surge de los hechos que trataran de controlarlo. En otras palabras, en este momento el tribunal no está en posición de determinar la responsabilidad compartida de los padres y, por tanto, si alguno de ellos puede salir del pleito.[21]

---

[19] *Id.*, anejo 6, págs. 42-82.
[20] *Id.*, anejo 2, págs. 4-12.
[21] *Id.*, págs. 10-11.

El 8 de julio de 2024, el señor Flaherty presentó *Moción en solicitud de reconsideración* en la cual argumentó que el término de "custodia inmediata" se diferencia al de "custodia compartida". Alegó que el hecho de existir un acuerdo de custodia compartida, no lo hace responsable de los actos de su hijo, debido a que *López y otros v. Porrata y otros*, supra, estableció que "la responsabilidad se traspasa con el menor y responde el padre que lo tenga en el momento de la comisión del acto culposo". Por lo que, señaló que el uso indiscriminado de tales términos en la *Resolución y Orden* es contrario a la intención legislativa.

El 12 de septiembre de 2024, el señor Biase presentó *Oposición a moción en solicitud de reconsideración [SUMAC 77]* en la cual señaló que el derecho es claro y no reconoce incompatibilidad entre los términos de custodia compartida, custodia inmediata y custodia legal.[22]

Asi las cosas, el foro primario emitió el 12 de septiembre de 2024, notificada al día siguiente, una *Resolución* denegando la reconsideración.[23]

**C. Consolidación de BY2023CV04757 y SJ2023CV10926**

Ante la existencia de estos dos casos, el 17 de septiembre de 2024, el foro primario emitió una *Orden*, notificada el 19 de septiembre de 2024, en la que dispuso como sigue:

> Conforme a la Regla 38.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 38.1 y la Regla 15 de las Reglas para la Administración del Tribunal de Primera Instancia, el Tribunal ordena la consolidación del caso SJ2023CV10926 con el caso de mayor antigüedad BY2023CV04757.[24]

Inconforme, el 15 de octubre de 2024, la señora Greene, el señor Flaherty y el señor Macdara (en conjunto, "apelantes") acudieron ante nos mediante el recurso de apelación con

---

[22] *Id.*, anejo 12, págs. 101-105.
[23] *Id.*, anejo 1, págs. 1-3.
[24] Apéndice del recurso KLCE202500318, anejo 27, págs. 176-177.

alfanúmero **KLAN202400916** —relacionado al caso BY2023CV04757— señalando la comisión del error siguiente:

> Erró el Tribunal de Primera Instancia al desviarse del estándar de análisis de una moción de desestimación bajo la Regla 10.2(5) —tal como la interpuesta por los demandados— y desestimar una demanda de difamación que contiene alegaciones más que suficientes para justificar un remedio a favor de los demandantes.

En igual fecha, 15 de octubre de 2024, el señor Flaherty interpuso un recurso de *Certiorari* con alfanúmero **KLCE202401110** —relacionado al caso SJ2023CV10926— y señaló la comisión de los errores siguientes:

> A. PRIMER ERROR: Cometió error manifiesto el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al declarar No Ha Lugar la desestimación solicitada, equiparando los conceptos custodia inmediata y custodia compartida para imponer responsabilidad vicaria al Sr. Flaherty por los actos de su hijo durante el periodo en que se encontraba bajo la custodia inmediata de la madre.
>
> B. SEGUNDO ERROR: Cometió error manifiesto el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al determinar que para propósitos de imposición de responsabilidad vicaria por los hechos reclamados en este caso, la mera existencia de un régimen de custodia compartida coloca al padre como responsable bajo el inciso (a) del artículo 1540 del Código Civil de 2020, y en consecuencia, entrar a discutir y resolver que no aplica al padre la excepción contenida en el último párrafo del artículo 1540, cuando el padre no tenia la custodia inmediata a la que hace referencia el inciso (a) del artículo, por lo cual procedía la desestimación solicitada.

El 21 de octubre de 2024, emitimos *Resolución* en la cual ordenemos la consolidación de los recursos KLAN202400916 y KLCE202401111 por recurrir de un pleito consolidado en el foro primario.

Aun pendientes los recursos apelativos, el 31 de octubre de 2024, Mapfre presentó —en el foro primario— una *Solicitud de Sentencia Sumaria Parcial.*[25] Alegó que, tras la admisión de los daños provocados por el señor Macdara en la *Demanda*, procedía que la señora Greene y el señor Flaherty reembolsaran el pago de $10,885.00 efectuado por Mapfre en virtud de su derecho de

---

[25] *Id.*, anejo 30, págs. 187-313.

subrogación. Por lo cual, sostuvo que procedía dictar sentencia sumaria parcial a los efectos de declarar con lugar la reconvención.

Por su parte, el 4 de noviembre de 2024, el señor Biase presentó —ante este foro revisor— una *Moción en cumplimiento de orden, en oposición al auto de Certiorari, mostrando causa por la cual no debe expedirse, ni revocarse la determinación objeto del presente recurso KLAN202400916.*

Luego de unos trámites procesales, el 14 de noviembre de 2024, el señor Biase instó —en el Tribunal de Apelaciones— *Alegato de la parte apelada objeto del presente recurso KLAN202400916.*

Ese mismo día, 14 de noviembre de 2024, el señor Flaherty presentó un *Escrito en oposición al amparo de la Regla 38(A) del Reglamento del Tribunal de Apelaciones Honorable Tribunal de Apelaciones.* Adujo que el señor Biase pretende equiparar la custodia inmediata y la custodia compartida para interpretar la responsabilidad vicaria impuesta por el legislador en el Artículo 1540(a) del Código Civil de Puerto Rico de 2020. No obstante, señaló que esa no fue la intención del legislador y fundamentó su posición tanto con el Proyecto de la Cámara Núm. 1649 como con la normativa de la jurisprudencia siguiente: *López y otros v. Porrata y otros,* 156 DPR 503 (2002); *Baba et als. v. González et al.,* 157 DPR 636 (2002).

Posteriormente, el 2 de diciembre de 2024, el señor Flaherty presentó —en el foro primario— una *Moción en oposición a solicitud de sentencia sumaria.*[26] Allí alegó que era improcedente el remedio sumario, ya que existían controversias esenciales y materiales. Señaló que existía una controversia medular bajo la consideración del Tribunal de Apelaciones sobre la responsabilidad del señor Flaherty en cuanto a los hechos provocados por su hijo, el señor

---

[26] Apéndice del recurso KLCE202500318, anejo 34, págs. 322-477.

Macdara. Además, sostuvo que Mapfre no acreditó su derecho de subrogación y adjuntó, en su solicitud de sentencia sumaria, copia de una póliza certificada con contenido distinto a la que proveyó en el descubrimiento de prueba.

Al día siguiente, 3 de diciembre de 2024, el señor Macdara presentó *Moción uniéndonos a la "Moción en oposición a solicitud de sentencia sumaria" [SUMAC 172]* mediante la cual informó que acogen los planteamientos del señor Flaherty en moción de oposición.[27]

Asimismo, el 5 de diciembre de 2024, la señora Greene instó su *Oposición a solicitud de sentencia sumaria parcial presentada por Mapfre-Praico*.[28] En síntesis, argumentó que, hasta que no derrotaran las defensas afirmativas levantadas por la señora Greene, Mapfre no podía cobrar lo reclamado en su reconvención. Además, señaló que el alegado derecho de subrogación no aplica *ex proprio vigore*.

Así las cosas, el 17 de enero de 2025, el foro primario emitió y notificó *Resolución* mediante la cual denegó la solicitud de sentencia sumaria parcial presentada por Mapfre.[29] Además, en cumplimiento con la normativa aplicable, esbozó una lista de los hechos incontrovertidos y los hechos en controversia, a saber:

**HECHOS INCONTROVERTIBLES**
1. El Sr. Lucio Biase es titular de la propiedad sita en el número 357 del complejo Dorado Beach East, en Dorado, Puerto Rico, desde el 28 de febrero de 2022.
2. Mapfre es una compañía de seguros debidamente autorizada en Puerto Rico.
3. Mapfre expidió póliza de seguros número 1777229003802 a favor de Lucio Biase, la cual cubre daños a la propiedad inmueble y mueble sita en el número 357 del complejo Dorado Beach East, en Dorado, Puerto Rico.
4. La Sra. Sarah Greene es la madre de Macdara.
5. El Sr. Michael Flaherty es el padre de Macdara.
6. A la fecha de los hechos, el 25 de noviembre de 2022, Macdara tenía veinte (20) años.

---

[27] *Id.*, anejo 36, págs. 480-483.
[28] *Id.*, anejo 38, págs. 486-496.
[29] *Id.*, anejo 40, págs. 499-515.

7. El 25 de noviembre de 2022, Macdara se personó en la propiedad del Sr. Lucio Biase, localizada en el número 357 del complejo Dorado Beach East, en Dorado, Puerto Rico.

8. El 25 de noviembre de 2022, Macdara forzó la entrada a la propiedad del señor Biase, localizada en el número 357 del complejo Dorado Beach East, en Dorado, Puerto Rico.

9. Macdara fue acusado por varios delitos.

10. El 22 de febrero de 2024, Macdara fue sentenciado por varios delitos.

11. Por motivo de la entrada forzosa a la residencia y los daños ocasionados por Macdara, el señor Biase reclamó compensación bajo la póliza de seguros número 1777229003802, por lo cual se abrió la reclamación número 20231269407.

12. El 18 de julio de 2023, Lucio Biase suscribió un "Sworn Statement in Proof of Loss", mediante el cual se ajustaban algunas de las partidas de daños reclamadas a la aseguradora.

13. Los daños a la propiedad según reclamados a la aseguradora se valoraron en $11,385.00, a cuya suma se le aplicó un deducible de $500.00.

14. El 19 de julio de 2023, Mapfre Insurance Company realizó un pago al Sr. Lucio Biase, bajo la reclamación número 20231269407, mediante el cheque número 2310807, por la suma de $10,885.00.

### HECHOS EN CONTROVERSIA

1. Si Mapfre cumplió con sus propios requisitos para subrogarse.

2. Si el cheque otorgado por Mapfre fue cobrado y en consiguiente esta aseguradora tiene derecho a subrogarse.[30]

En desacuerdo, el 3 de febrero de 2025, el señor Flaherty presentó *Moción en solicitud de reconsideración parcial*.[31] Allí peticionó al foro primario que eliminara ciertas conclusiones por era contrarias a los hechos del caso y el derecho aplicable. Alegó que el foro primario incluyó unas conclusiones —relacionadas a la custodia física de su hijo, el señor Macdara, al momento del incidente— lo cual se encontraba *subjudice* ante el Tribunal de Apelaciones. Además, argumentó que el foro primario concluyó erróneamente que el señor Flaherty llevó a su hijo, el señor Macdara, al Restaurante Melao by Mario Pagan y quien lo buscó en el CDT de Dorado.

---

[30] *Id.*, págs. 505-507.
[31] *Id.*, anejo 43, págs. 531-536.

En consecuencia, el 27 de febrero de 2025, el foro primario emitió y notificó *Resolución* en la cual denegó la solicitud de reconsideración.[32]

Aun en desacuerdo, el 28 de marzo de 2025, el señor Flaherty presentó el recurso de *Certiorari* con alfanumérico **KLCE202500318** —relacionado al caso consolidado BY2023CV04757— y señaló la comisión de los errores siguientes:

A. PRIMER ERROR: Actuó con prejuicio, parcialidad y cometió error manifiesto el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al declara No Ha Lugar la Reconsideración Parcial de su Resolución, negándose a corregir errores claro, patentes y manifiestos en sus conclusiones sobre el Sr. Flaherty, a pesar de que le fueron señalados oportunamente.

B. SEGUNDO ERROR: Cometió error manifiesto el Honorable Tribunal de Primera Instancia, Sala Superior de Bayamón, al citar y tratar como finales y firmes determinaciones suyas previas a sabiendas de que se encuentran bajo la consideración de este tribunal, emitiendo nuevas determinaciones sobre asuntos que se encuentran ante este foro revisor.

Por su parte, los recurridos no presentaron su alegato en oposición dentro del término provisto para ello.

Así pues, perfeccionados todos los recursos consolidados, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Regla 10.2(5) de Procedimiento Civil**

La Regla 10.2 de las de Procedimiento Civil autoriza al demandado –ya sea en una demanda, reconvención, demanda contra coparte o demanda contra tercero– a presentar una moción de desestimación debidamente fundamentada a esos fines. 32 LPRA Ap. V, R. 10.2. En particular, la precitada regla reconoce los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del

---

[32] *Id.*, anejo 1, págs. 1-3.

emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022).

En síntesis, el demandado que formula una moción de desestimación bajo la Regla 10.2 de las de Procedimiento Civil, *supra*, hace el siguiente planteamiento:

> "**Yo acepto para los propósitos de mi moción de desestimación que todo lo que se dicte en esta demanda es cierto, pero aun así**, **no aduce una reclamación que justifique la concesión de un remedio**, o no se ha unido una parte indispensable, o el tribunal no tiene jurisdicción, etc." Es decir, a los efectos de considerar esta moción no se ponen en duda los hechos aseverados porque se ataca por un vicio intrínseco de la demanda o del proceso seguido.

R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., Lexis Nexis, 2017, pág. 309. (Citas omitidas) (Énfasis suplido).

Como regla general, el tribunal, al momento de adjudicar una moción desestimación bajo la precitada disposición legal, lo hace a base de lo expuesto en la alegación contra la cual se dirige. *Id.*

En relación con el quinto inciso de esta Regla, sobre el fundamento de que la demanda no expone una reclamación que justifique la concesión de un remedio, el Tribunal Supremo ha expuesto lo siguiente:

> [...] a los fines de disponer de una moción de desestimación, estamos obligados a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. Para prevalecer, el promovente de la moción tiene que demostrar que, aun así, la demanda no expone una reclamación que justifique la concesión de un remedio. Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas.
>
> Frente a una moción para desestimarla, la demanda debe ser interpretada lo más liberalmente posible a favor de la parte demandante, y sus alegaciones se examinarán de la manera más favorable a ésta. La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación. Nuestro deber es considerar si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida

*Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 504-505 (1994) (citas omitidas).

Por último, la Regla 10.2 de las de Procedimiento Civil, *supra*, puntualiza en su quinto inciso que:

> Si en una moción en que se formula la defensa número (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción **deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final**, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla. *Id.* (Énfasis suplido).

Es decir, el promovente de una moción bajo el quinto inciso de la Regla 10.2 de las de Procedimiento Civil, *supra*, que impugne o derrote la veracidad de los hechos deberá cumplir con todos los requisitos de la solicitud de sentencia sumaria para que esta sea considerada por el tribunal. *Id.*, R. 10.2 y R. 36.3; véase *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

## B. Difamación

La Constitución de Puerto Rico dispone "[t]oda persona tiene derecho a la protección de ley contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar". Const. PR, Art. II, Sec. 8, LPRA Tomo 1. De tal disposición surge la protección a un ciudadano contra la difamación, la cual es definida como aquella acción de "[d]esacreditar a una persona publicando cosas contra su reputación". *Pérez v. El Vocero de PR*, 149 DPR 427, 441 (1999).

En nuestro ordenamiento jurídico, las acciones de difamación plantean la necesidad de balancear entre: (1) el derecho a la intimidad de los individuos, y (2) el derecho a la libre expresión y la libertad de prensa, que comprende el interés del Pueblo en fomentar el debate vigoroso sobre cuestiones de interés público. *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 795 (2020). Además, la reclamación por difamación tiene dos vertientes, a saber: libelo y calumnia. Por un lado, el libelo se conoce como la difamación maliciosa que se realiza contra una persona por

cualquier medio escrito de comunicación, que tienda a exponerle a ser desacreditada, deshonrada o menospreciada. 32 LPRA sec. 3142. De otra parte, la calumnia trata de una expresión difamatoria oral, la cual se debe configurar junto a los otros elementos de la causa de acción. 32 LPRA sec. 3143; *Ojeda v. El Vocero de PR*, 137 DPR 315, 326 (1994).

Los elementos constitutivos de la causa de acción por difamación dependerán, en primera instancia, de si el demandante es una persona privada o una figura pública. *Ojeda v. El Vocero de PR*, supra, pág. 329. En Puerto Rico, la acción por difamación en cuanto a funcionario y figuras públicas se considera como una acción torticera intencional, mientras que cuando el perjudicado es una persona privada es considera como una acción de daños y perjuicios fundamentados en negligencia. *Id.* Esto es, para que una persona privada tenga éxito en su causa de acción por libelo, deberá probar: (1) que la información difamatoria publicada es falsa; (2) que la publicación se hizo de forma negligente; y (3) que su publicación le causó daños reales. *Pérez v. El Vocero de PR,* supra, pág. 442; *Villanueva v. Hernández Class*, 128 DPR 618, 642 (1991).

Sin embargo, cuando se trata de una figura pública, se le requiere al demandante demostrar, además, que la información fue publicada con malicia real, es decir, a sabiendas de que era falsa o con grave menosprecio de si era falsa o no. *Villanueva v. Hernández Class,* supra, 642. Además, la malicia real no puede presumirse, por lo que el estándar de prueba es de clara, robusta y convincente. *Colón, Ramírez v. Televicentro de PR*, 175 DPR 690, 725 (2009). En cambio, la negligencia ha sido definida como la falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto,

que una persona prudente habría de prever en las mismas circunstancias. *Colón, Ramírez v. Televicentro de PR,* supra, pág. 706-707.

## C. *Certiorari*

El recurso de *Certiorari* es un mecanismo procesal que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023).   Distinto al recurso de apelación, el foro revisor tiene la facultad para expedir o denegar el recurso de C*ertiorari* de manera discrecional. *García v. Padró,* 165 DPR 324, 334 (2005). Sin embargo, tal discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres González v. Zaragoza Meléndez,* supra, pág. 847.

En específico, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, a saber:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Id.*

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra,* este tribunal intermedio procederá a evaluar el recurso a la luz de la

Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. La referida regla establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *Certiorari*, como sigue:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A.   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.   Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.   Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. *Id.*

Cabe precisar que nuestro Tribunal Supremo ha expresado que, de ordinario, el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 210; *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 497 (2022).

Por tanto, la denegatoria a expedir un recurso discrecional responde a la facultad de este tribunal intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia y no implica la ausencia de error en el dictamen recurrido ni una

adjudicación en los méritos. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008).

En lo que respecta al caso de marras, la correcta consecución de la justicia necesariamente conlleva reconocer a los juzgadores de los foros primarios un amplio margen de deferencia respecto al ejercicio de sus facultades adjudicativas dentro del proceso que dirigen. Dado a eso, y sin apartarse de los preceptos pertinentes al funcionamiento del sistema judicial, el adjudicador concernido está plenamente facultado para conducir el proceso que atiende conforme le dicte su buen juicio y discernimiento, siempre al amparo del derecho aplicable. *In re Collazo I,* 159 DPR 141, 150 (2003). En consonancia con ello, nuestro más Alto Foro ha expresado en *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que los tribunales apelativos no "deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por éste en el ejercicio de su discreción, salvo que se pruebe que actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción o en error manifiesto".

**D. La responsabilidad de los progenitores por los actos dañosos de sus hijos**

En Puerto Rico, como regla general, una persona responde por los daños que ocasione a otra por sus hechos propios. 31 LPRA sec. 5141; 31 LPRA sec. 10801. A modo de excepción, nuestra legislación reconoce ciertas circunstancias en las cuales una persona viene obligada a responder por hechos ajenos. 31 LPRA sec. 5142; 31 LPRA sec. 10805. Al respecto, el Artículo 1540 (a) del nuevo Código Civil de Puerto Rico de 2020, 31 LPRA sec. 10805, responsabiliza a los progenitores de un menor de edad que ocasiona un acto dañoso a una tercera persona. No obstante, para una mejor comprensión del lenguaje del precitado artículo, es pertinente remitirnos a su

equivalente, el Artículo 1803 del derogado Código Civil de 1930, y su jurisprudencia interpretativa.

En esencia, el Artículo 1803 del derogado Código Civil de 1930, establecía una presunción *juris tantum* de culpa contra el padre y, en alternativa, la madre, de un menor de edad por los daños que este ocasione. *Álvarez v. Irizarry*, 80 DPR 63, 66 (1957). Particularmente, el referido artículo disponía como sigue:

> El padre y por muerte o incapacidad de este, la madre, son responsables de los perjuicios causados por los hijos menores de edad que viven en su compañía.
>
> [...]
>
> La responsabilidad de que trata este artículo cesará cuando las personas en ella mencionadas prueben que emplearon toda la diligencia de un buen padre de familia para prevenir el daño.

31 LPRA sec. 5142.

De una lectura somera del texto en el Artículo 1803 del Código Civil de 1930, luce sugerir que se le impone al padre y, en su ausencia, a la madre, el deber *in vigilando* de la conducta de sus dependientes que vivan en su compañía. Esto es, en primer lugar, responde el padre y, en segundo lugar, la madre por los actos de sus hijos mientras estén en su compañía y puedan vigilarlos. En Puerto Rico, el deber *in vigilando* está relacionado con el deber de anticipar riesgos, los cuales dependen de la peligrosidad de la conducta, y por ende, implica ejercitar un cuidado razonable para evitar que los hijos establezcan un riesgo irrazonable de daños a terceras personas. *Cruz v. Rivera*, 73 DPR 682, 688-689 (1952). Por lo tanto, la responsabilidad de los padres no es responsabilidad por el hecho ajeno, sino por su propio hecho de incumplir con el deber de vigilar y no tomar las medidas aconsejadas por la prudencia para que sus hijos se conduzcan de acuerdo con los derechos de los demás. *Cruz v. Rivera*, supra, pág. 686. No obstante, la responsabilidad de los padres no es absoluta, toda vez que:

> [l]os padres no son garantizadores *sine qua non* de las actuaciones de sus hijos. Cada caso específico debe medirse por sus circunstancias especiales, y los hechos de cada caso deben ser considerados a los fines de determinar si hubo o no hubo negligencia de parte de los padres, en cuanto a si las actuaciones del hijo se deben al incumplimiento por el padre de su deber de vigilancia, represión, disciplina y educación.

*Cruz v. Rivera*, supra, pág. 689.

Razón por la cual, la responsabilidad de vigilancia consagrada en el Artículo 1803 del derogado Código Civil de 1930 era una presunción controvertible. Es decir, no era necesario probar la culpa o negligencia de los padres, sino que son estos quienes tienen que probar que no incurrieron en culpa o negligencia para así eximirse de responsabilidad. Salvo que de la propia prueba del demandante revele la ausencia de culpa o negligencia de los padres. *Cruz v. Rivera*, supra, pág. 692.

Acerca del precitado Artículo 1803, el Compilador Miguel R. Garay Aubán nos ilustra y comenta como sigue:

> Claramente la letra del Artículo 1803 establece una prelación normativa entre la responsabilidad del padre y de la madre. La segunda solo ha de responder del daño que causó su hijo si el padre murió o está incapacitado. El Código de 1930 no anticipó la posibilidad de un divorcio porque cuando se redactó el Código original en el año 1889, no se reconocía el divorcio.

M. R. Garay Aubán, *Código Civil 2020 y su historial legislativo: artículos, referencias concordancias, notas del compilador y memoriales explicativos*, 2da ed. rev., San Juan, Ediciones SITUM, Inc., 2021, T. IV, pág. 578.

Dado a los cambios sociales en Puerto Rico, en *López y otros v. Porrata y otros*, 156 DPR 503 (2002), nuestra más Alta Curia interpretó el Artículo 1803 del derogado Código Civil de 1930 ante una circunstancia de padres divorciados y, en ese ámbito, aclaró que responderá el progenitor con el que "convive" el menor. De esa forma, el Tribunal Supremo concluyó que la "convivencia" era un requisito indispensable para la imposición de responsabilidad a los padres, ya que establece la posibilidad de ejercer el deber de vigilar. Esto es, resolvió que -indistintamente sea el padre o la madre- será responsable el progenitor custodio al momento de causarse el daño.

Además, adoptó la Teoría del Traspaso de Responsabilidad, la cual

sostiene lo siguiente:

> [...] en casos de divorcio, de ordinario responderá por los hechos de los hijos el progenitor a quien corresponda la custodia del menor, excepto si el hecho dañoso se comete cuando el menor "convive" con el otro padre, en virtud del derecho de visita, pues este derecho transfiere la custodia y el deber de vigilar al menor durante los periodos de tiempo en que tenga lugar. Ciertamente, el padre no custodio, quien se relaciona con su hijo por virtud del derecho de visita, tendrá al menor en su "compañía" por los periodos de tiempo que ésta perdure y responderá a tenor con el citado Art. 1803. De otra parte, en tales casos la ausencia de "compañía" del padre custodio será legitima pues ella se fundamenta en el derecho que tiene el otro progenitor a relacionarse con su hijo.

*López y otros v. Porrata y otros*, supra, pág. 518.

En cuanto al concepto de "convivencia", el Alto Foro señaló

que este no ha de interpretarse en un sentido estricto ni rígido ni

con contornos exactos. Por el contrario, habrá que atender los

hechos particulares de cada caso para poder determinar con quien

convive el menor, ya que si sus progenitores están separados por

decreto judicial es posible que conviva con ambos. Por lo que, el

Tribunal Supremo ilustró que —para formular un análisis factico de

cada caso a los fines determinar la convivencia— el foro primario

podrá iniciar su examen con la sentencia que regule la custodia y el

derecho de visita de los menores. Lo anterior fue reiterado por

nuestra Alta Curia en *Baba et als. v. González et al.,* 157 DPR 636,

644-645 (2002), a saber:

> [...] la norma enunciada no se reduce a responsabilizar automáticamente a aquel padre que tenga la custodia a tenor con un decreto judicial.
> [...] La "convivencia" no se deriva mecánicamente de lo dispuesto en un decreto judicial de custodia, pues lo determinante no será, necesariamente, la realidad *de jure* sino las circunstancias fácticas del caso. Así, por ejemplo, si el régimen de visitas se amplía al margen de la sentencia judicial, por acuerdo tácito entre las partes, será responsable el progenitor con quien esté el menor en un momento determinado según las circunstancias de hecho. Por supuesto, esto no significa que el dictamen de custodia sea irrelevante en estos casos, pues seguramente será pertinente, aunque no concluyente, para determinar con cuál padre convivía el menor cuando produjo el daño.
> [...]
> Ahora bien, debe quedar claro que *López y otros v. Porrata y otros,* supra, no sugiere que el padre custodio siempre responderá por los daños de sus hijos menores de

edad. En dicho caso reiteramos que el padre no custodio responderá cuando tenga al menor en su compañía; lo que ocurriría, por ejemplo, cuando ejerza el derecho de visita sobre el menor. La norma es neutral: responde el padre en cuya compañía viva el menor cuando ocurra el daño; sea el custodio o el no custodio. Ciertamente, es posible que el padre custodio responda con mayor frecuencia, pues de ordinario tendrá al menor en su compañía. Sin embargo, igual resultado se produciría si el padre no custodio es quien se relaciona con mayor frecuencia con el menor. En ambos casos, sin embargo, el presupuesto de responsabilidad es la convivencia (a tenor con las circunstancias fácticas del caso) y no la custodia *de jure* a tenor con un decreto judicial.

Ahora bien, el nuevo Código Civil de 2020 en su Artículo 1540 (a) reza como sigue:

> Responden de los daños que causan la culpa o negligencia de sus dependientes, las siguientes personas:
>
> > (a) el progenitor que tiene la custodia inmediata de sus hijos menores de edad no emancipados, por los daños que estos causan;
>
> [...]
>
> Las personas mencionadas en los incisos (a), (b) y (c) no son responsables, si prueban que ejercieron la diligencia propia de una persona razonablemente prudente.

31 LPRA sec. 10805.

Interpretando lo anterior, el Compilador Miguel R. Garay Aubán sostiene que el Artículo 1540 (a) incorpora lo resuelto en *López y otros v. Porrata y otros*, supra. Véase, M. R. Garay Aubán, *op. cit.,* pág. 579. Además, comentó lo siguiente:

> Nótese que los vocablos "padre y madre desaparecieron del texto del nuevo Articulo 1540 y fueron sustituidos por la palabra "progenitores" para obviar el discrimen por género. En adicción se eliminó el requisito de que el menor viva en la compañía del progenitor que ha de responder. **Así basta para imponer responsabilidad al progenitor la prueba de que éste tenía la custodia inmediata del menor al momento de causarse el daño y que el hijo causó el mismo.**

*Id.* (Énfasis suplido).

Además, es relevante notar que, en los comentarios del Código Civil Comentado, se dispuso que el Artículo 1540 "no adopt[a] nuevas normas ni tienen la intención de apartarse de la interpretación de apartarse de la jurisprudencia que, hasta el presente, los ha interpretado". Véase, Artículo 1540 del Código Civil Año 2020 Comentado, en https://www.oslpr.org/_files/ugd/

5be21a_15cd7772b7ca4ecd84035ed394e1e517.pdf (última visita, 20 de octubre de 2025).

Discutido el derecho aplicable, este Tribunal se encuentra en posición para resolver las controversias señaladas en el recurso de epígrafe.

**-III-**

De entrada, nos parece conveniente señalar que, para propósitos de una mejor comprensión del análisis y discusión, debemos atender de manera individualiza cada recurso. Veamos.

**A. Recurso KLAN202400916**

En síntesis, los apelantes alegaron que el foro primario no aplicó el estándar de análisis requerido para una moción de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, *supra,* y, en consecuencia, desestimó una demanda con alegaciones suficientes para la concesión de un remedio.

Por su parte, los apelados argumentaron que la *Demanda* no contiene hechos bien alegados, sino conjeturas, conclusiones y opiniones. Incluso, señalaron que no hay ningún hecho especifico que sea atribuibles a ellos, ya que los apelantes no demostraron "¿Quién dijo que?, ¿Dónde alguien dijo que?, ¿Cuándo se dijo que?, ¿Qué se dijo específicamente?, ¿Quién estaba presente?". Véase, Alegato de los apelados, pág. 12. Además, adujeron que la *Demanda* fue presentada como una estrategia para intimidarlos y prevenir que fungieran como testigos en el caso penal instado contra el señor Macdara.

Adelantamos que, luego de una minuciosa evaluación del expediente, determinamos que no quedó demostrado que el foro primario haya actuado mediante error manifiesto, pasión, perjuicio o parcialidad al realizar su dictamen. Consecuentemente, no vemos motivos para intervenir con la *Sentencia* apelada. Nos explicamos.

Ciertamente, en el caso ante nuestra consideración, los apelantes instaron una *Demanda* sobre difamación contra el señor Biase y la señora Gilmore. Allí aceptaron que, el 25 de noviembre de 2023, el señor Macdara "se desorientó debido al estado de intoxicación en que se encontraba, desvió su camino y, por error, forzó su entrada" a la residencia del señor Biase. Por tales hechos, argumentaron que los apelados emprendieron una campaña de difamación en la comunidad de Dorado Beach sobre el señor Macdara y la señora Greene. Asimismo, redactaron cuatro (4) alegaciones que, a su entender, eran expresiones falsas y difamatorias realizadas por los apelados, a saber:

e. M.G.F era un merodeador que pululaba por la urbanización desde el mes de septiembre de 2022, sembrando el pánico y el terror entre vecinos;
f. M.G.F. intentó violar a Gilmore en la noche de los hechos;
g. M.G.F. era un criminal peligroso que debía ser encarcelado y su entrada a Dorado Beach East debería ser prohibida; y
h. Greene había criado un monstruo.[33]

No obstante, según expusimos en el acápite II, la difamación es la acción de desacreditar a una persona publicando cosas contra su reputación. *Pérez v. El Vocero de PR*, supra, pág. 441. Asimismo, explicamos que el acto de difamar puede realizarse a través de cualquier medio escrito de comunicación (vertiente conocida como libelo) o por una expresión oral (vertiente conocida como calumnia). *Ojeda v. El Vocero de PR*, supra, pág. 326. En nuestra jurisdicción, una demanda sobre difamación de una persona privada se considera como causa de acción sobre daños y perjuicios fundamentada en negligencia. Esto es, el perjudicado deberá probar los elementos siguientes: (1) que la información es difamatoria y falsa, (2) que se publicó de forma negligente, y (3) que sufrió daños reales por ello. *Pérez v. El Vocero de PR,* supra, pág. 442; *Villanueva v. Hernández Class,* supra, pág. 642.

---

[33] Apéndice del recurso KLAN202400916, anejo 5, pág. 35.

En el presente caso, aun cuando tomemos por ciertas y buenas todas las alegaciones fácticas de la *Demanda*, concluimos que los hechos alegados no son suficientes para constituir una causa de acción por difamación conforme a la jurisprudencia precitada. Coincidimos, pues, con el análisis del foro primario en cuanto a que:

> [...] realmente de la demanda no surgen alegaciones específicas, sobre los comentarios supuestamente hechos por los demandados, ni siquiera pueden señalar si fue la señora Gilmore quien los hizo, su pareja el señor Biase o ambos, solo que alguno de estos dijo algo. Peor, aún, no surge cuándo se realizaron dichos comentarios, a quiénes se los dijeron y cómo se enteraron los demandantes. O sea, las alegaciones de la demanda son muy poco específicas, generales y aún, cuando sean ciertas, se fundamentan en hechos que realmente ocurrieron.

Véase, Apéndice del recurso KLAN20240916, anejo 1, pág. 16.

Entiéndase que los apelantes ni siquiera alegaron qué, cómo, cuándo, quién y en dónde se manifestaron las alegadas expresiones difamatorias. Tampoco alegaron cuál variante de difamación fue utilizada por los apelados para llevar a cabo las alegadas expresiones falsas y difamatorias. Esto es, no alegaron que las expresiones de difamación se hicieron de forma oral en su vertiente de calumnias o, en alternativa, por medios escrito de comunicación en su vertiente de libelo. Más aun, no alegaron cuál fue el daño real que sufrieron como consecuencia de las alegadas expresiones difamatorias. Recordemos que, en derecho, no es suficiente alegar que se empleó una difamación en su contra, sino que se deben consignar hechos bien alegados en la demanda y no meras conclusiones de derecho.

Por lo tanto, concluimos que las alegaciones de la *Demanda* debieron ser más específicas sobre los detalles de las alegadas expresiones difamatorias y los daños sufridos. En fin, aun tomando como ciertos todos los hechos expuestos en la *Demanda* e interpretándolos de la manera más liberalmente posible a favor de

los apelantes, no podemos deducir que haya presentado una reclamación que justifique la concesión de un remedio

Además, tras analizar el estándar que aplicó el foro primario para analizar la solicitud de desestimación bajo la Regla 10.2(5) de Procedimiento Civil, sostenemos que aplicó el estándar correcto conforme a *Costa Elena y otros, v. Magic Sport y otros,* supra; *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70 (2023); *Cobra Acquisitions v. Mun. de Yabucoa et al.,* supra; *González Méndez v. Acción Social et al.,* 196 DPR 213 (2016). Surge de la *Sentencia Parcial* que, el foro primario tomó como ciertas las alegadas expresiones difamatorias consignadas en la *Demanda* e incluso las discutió una a una. Véase, apéndice del recurso KLAN202400916, anejo 1, págs. 15-18. A pesar de ello, el foro primario llegó a la conclusión de que tales alegaciones no podían considerarse como difamatorias por ser alegaciones meramente generales sin especificidad alguna. Por tanto, ante la ausencia de pasión, perjuicio, parcialidad o algún error manifiesto realizado por el foro primario, procede que confirmemos la sentencia apelada.

### B. Recurso KLCE202401110

Aquí el señor Flaherty formuló dos señalamientos de error. En síntesis, alegó que el foro primario erró al equiparar el concepto de "custodia compartida" y "custodia inmediata", e imponerle responsabilidad bajo el Artículo 1540 (a) del nuevo Código Civil de 2020.

Por su parte, el señor Biase argumentó que el señor Macdara se encontraba bajo la custodia compartida e inmediata de ambos progenitores desde el divorcio de estos hasta que advino a su mayoría de edad. Señalo, además, que el término "custodia compartida" y "custodia inmediata" son compatibles, no son mutuamente excluyentes. En particular, sostuvo que la

interpretación correcta de "custodia inmediata" es con quien convive el menor y, en caso de convivir con ambos progenitores, la custodia inmediata es de ambos.

A tenor con la Regla 52.1 de Procedimiento Civil, *supra,* sostenemos que tenemos la facultad en ley para atender el recurso de epígrafe, toda vez que se recurre de la denegatoria de una moción de carácter dispositivo.

Del expediente surge que, el foro primario denegó una solicitud de desestimación instada por el señor Flaherty.  A su entender, el señor Flaherty ostentaba la "custodia inmediata" del señor Macdara, debido a lo siguiente: (1) "el día de los hechos, al menos, por la mañana, el menor se encontraba con el señor Flaherty"; (2) "el menor pernoctó en casa del señor Flaherty el día anterior"; y (3) "solo estuvo con su madre para compartir en un restaurante". Véase, Apéndice del recurso KLCE20241110, anejo 2, págs. 10-11.

Conforme explicamos en el derecho aplicable, el nuevo Código Civil de Puerto Rico de 2020 en su Artículo 1540 (a) impone responsabilidad sobre **aquel "progenitor que tiene la custodia inmediata** de sus hijos menores de edad no emancipados, por daños que estos causan". 31 LPRA sec. 10805. Por su parte, su equivalente, el Artículo 1803 del derogado Código Civil de 1930 imponía responsabilidad sobre el padre y, en su ausencia, la madre, por los daños que ocasionados por sus hijos menores de edad **que viven en su compañía**. 31 LPRA sec. 5142.

Ciertamente, la redacción del Artículo 1540 (a) es distinta al texto de su equivalente, el Artículo 1803 del derogado Código Civil de 1930. No obstante, sostenemos que el legislador no incorporó nuevas normas ni tuvo intención de apartarse de la interpretación jurisprudencial existente. Véase, Artículo 1540 del Código Civil Año 2020    Comentado,    en    https://www.oslpr.org/_files/ugd/

5be21a_15cd7772b7ca4ecd84035ed394e1e517.pdf (última visita, 20 de octubre de 2025). Por lo cual, en nuestra tarea de analizar la disposición del Artículo 1540, debemos remitirnos la interpretación jurisprudencial sobre su equivalente, el Artículo 1803 del derogado Código Civil de 1930.

Al así hacerlo, entendemos el concepto de "custodia inmediata" —aun cuando no definido en el Código Civil de 2020— se refiere aquella que se traspasa con la tenencia física del hijo menor de edad en el contexto de progenitores divorciados, ya que permite la posibilidad de ejercitar el deber *in vigilando*. Nótese que, nuestra jurisprudencia ha reconocido que, el deber *in vigilando* está atado a la obligación que tienen los padres de supervisar y ejercer el cuidado razonable sobre la conducta de sus hijos, así como de anticipar los riesgos y daños a terceras personas. *Cruz v. Rivera*, supra, pág. 688-689. Por ello, al momento de imponer responsabilidad, el foro adjudicar podrá considerar el decreto judicial sobre custodia había entre los progenitores divorciados, pero ello no será determinante ni automático. Recordemos que, el Tribunal Supremo ilustró al foro primario a "comenzar su examen a partir de los decretos de visitas de los menores y forjar su análisis a tenor con las circunstancias fácticas de cada caso para así determinar con quién "convive" el menor cuando ocurre el daño". *López y otros v. Porrata y otros*, supra, pág. 519.

En *López y otros v. Porrata y otros*, supra, nuestro Tribunal Supremo interpretó el Artículo 1803 del derogado Código Civil de 1930 en el contexto de padres divorciados con custodia compartida. Allí adoptó la **Teoría del Traspaso de Responsabilidad** para imponer responsabilidad sobre aquel progenitor custodio al momento de causarse el daño. Específicamente expresó como sigue

> [...] en casos de divorcio, de ordinario responderá por los hechos de los hijos el progenitor a quien corresponda la custodia del menor, excepto si el hecho dañoso se comete cuando el menor "convive" con

el otro padre, en virtud del derecho de visita, pues este derecho transfiere la custodia y el deber de vigilar al menor durante los periodos de tiempo en que tenga lugar.

*López y otros v. Porrata y otros*, supra, pág. 518.

De otro lado, en *Baba et als. v. González et al.,* supra, la Alta Curia reafirmó la que "convivencia" es un requisito indispensable para la imposición de responsabilidad a los progenitores, ya que establece la posibilidad de ejercer el deber de vigilar. Además, subrayó la importancia de no interpretar el concepto "convivencia" en sentido estricto y rígido basado únicamente en un decreto judicial de custodia, sino que deberá ser interpretado caso a caso. Esto es, "responde el padre en cuya compañía viva el menor cuando ocurra el daño, sea el custodio o el no custodio". *Id.,* pág. 645. Toda vez que, "se presume que si se produce un daño, pudiendo vigilar al menos, es porque hubo una negligencia en tal vigilancia". *Id.*, pág. 641. Sin embargo, lo anterior "no establece un régimen de responsabilidad absoluta, bajo el cual se responda por el mero hecho de ser padre, sino que el mismo encuentra fundamento en la culpa *in vigilando*". *Id.,* pág. 641.

En síntesis, nuestro ordenamiento establece una presunción de culpa *in vigilando* sobre el padre o la madre que tenía el deber de vigilar al menor de edad al momento de causarse el daño. No obstante, esta presuncion es controvertible con evidencia que demuestre que no incurrieron en culpa o negligencia y que emplearon la diligencia de un buen padre de familia para prevenir el daño, ya que no son garantizadores *sine qua non* de los actos de sus hijos. *Cruz v. Rivera,* supra, pág. 689.

Así que, la jurisprudencia antes enunciada tuvo el efecto de enmendar las disposiciones del Artículo 1803 del derogado Código Civil de 1930 y atemperarlas con el cambio social en Puerto Rico relacionado al divorcio y composición familiar. Adoptando esos

preceptos, el legislador fijó la disposición del Artículo 1540 (a) en el nuevo Código Civil de 2020.

Consta en el expediente de autos que, el señor Flaherty y la señora Greene son los progenitores del señor Macdara y ostentaban la custodia compartida de este, por decreto judicial tras su divorcio. Véase, Apéndice del KLCE202401110, anejo 6, págs. 45, 46, 48, 53 y 62; anejo 12, pág. 103 Asimismo, surge del expediente que, el señor Macdara pernoctó la noche del 24 de noviembre de 2022 con su padre, el señor Flaherty. *Id.,* anejo 6, pág. 71. Igualmente, consta que el 25 de noviembre de 2022, el señor Macdara pasó algunas horas de la mañana con el señor Flaherty y el resto del día con su madre, la señora Greene. *Id.,* anejo 2, pág. 10; anejo 6, pág. 71; anejo 8, pág. 87. También, está consignado en el expediente y no hay controversia que ese mismo día, 25 de noviembre de 2022, la señora Greene recogió al señor Macdara a las 11:30 am en casa de su padre, el señor Flaherty, con el propósito de celebrar su cumpleaños en el Restaurante Melao by Mario Pagan ubicado en Dorado Beach East. *Id.,* anejo 2, págs. 6 y 7; anejo 3, pág. 16; anejo 4, págs. 30, 31, 37 y 38; anejo 6, pág. 71; anejo 8 págs. 87-88. En síntesis, "el menor pernoctó en casa del señor Flaherty el día anterior [a los hechos del caso de epígrafe] y solo estuvo con su madre para compartir en un restaurante". *Id.,* anejo 2, pág. 10. Fue allí donde se desencadenaron los hechos objeto de las causas de autos.

Ante estos hechos, nos resulta meridianamente claro que ocurrió un traslado de la responsabilidad que acarrea el Artículo 1540 (a) entre el señor Flaherty y la señora Greene. Nótese que, cuando la señora Greene recogió al señor Macdara, adquirió su tenencia física y se activó su deber supervisar (*in vigilando),* debido a que el menor se encontraba bajo su compañía. De manera que, los hechos ocasionados por el señor Macdara ocurrieron el 25 de

noviembre de 2022, mientras estaba baja la custodia inmediata de su madre, la señora Greene. Por lo tanto, la señora Greene era la progenitora responsable de anticipar riesgos sobre la conducta de su hijo, el señor Macdara, y ejercitar un cuidado razonable para evitar que daños a terceras personas.

Aclaramos que, mientras el señor Macdara estuvo bajo la compañía el señor Flaherty, este era el responsable de ejercer el deber de vigilar a su hijo y quien respondería por cualesquiera actos dañosos provocado por él. No obstante, durante su estancia con el señor Flaherty, el señor Macdara no realizó algún acto cubierto por Artículo 1540 (a).

De otro lado, nos parece inmeritorio el argumento del foro primario en cuanto al argumento que:

> [...] el problema de alcoholismo que, al parecer, tiene Macdara y que es la causa inmediata del incidente, comenzó cuando el señor Flaherty estaba casado con la señora Greene, y Macdara tenía 14 años y ninguno de estos demandados logró controlar dicho problema, e, incluso, aun no surge de los hechos que trataran de controlarlo.

Véase, Apéndice del KLCE202401110, anejo 2, pág. 11.

Basta recordar que, el estándar de análisis para imponer responsabilidad bajo el Artículo 1540 (a) del nuevo Código Civil de 2020 es determinar el progenitor con la custodia inmediata al momento que el menor ocasionó el daño en cuestión. Una vez el Tribunal haya identificado al progenitor con custodia inmediata, entonces procede que se evalúen los hechos del caso bajo el crisol de culpa *in vigilando.* En otras palabras, "si las actuaciones del hijo se deben al incumplimiento por el padre de su deber de vigilancia, represión, disciplina y educación". *López y otros v. Porrata y otros, supra, pág. 513.* Por lo tanto, sostenemos que emitir juicio respecto a la represión, disciplina y educación ejercida por los progenitores en una época anterior a la ocurrencia del daño no constituye el propósito que persigue el Artículo 1540 (a) del nuevo Código Civil de 2020. Dicho de otra forma, la responsabilidad por acto ajeno

dispuesto en el Artículo 1540 (a) del nuevo Código Civil de 2020 es una excepción a la regla general de que cada quien responde por sus propios actos. Esa excepción se limita a responder por los daños que ocasione el menor por la culpa *in vigilando* del progenitor mientras lo tiene en su custodia inmediata.

Por tanto, el primer y segundo señalamiento de error planteados en el recurso KLCE20241110 fueron cometidos. Por lo que, concluimos que procede revocar la resolución recurrida por apartarse de la interpretación consignada en nuestro ordenamiento. Así revocada, procede desestimar la causa de acción contra el señor Flaherty.

Por último, advertimos que la presente adjudicación no impide que la señora Greene rebata la presuncion de culpa *in viligando* que obra en su contra con respecto a los actos ocasionados por su hijo, el señor Macdara, mientras bajo su custodia inmediata. Esto es, en la continuación de los procedimientos, la señora Greene tendrá la oportunidad de demostrar que cumplió los deberes que le impone el ordenamiento, así como aquella diligencia propia de una persona razonablemente prudente para poder ser eximida de responsabilidad.

### C. Recurso KLCE202500318

En el presente auto de *Certiorari*, el señor Flaherty planteó dos señalamientos de error. Argumentó, en síntesis, que el foro primario actuó con prejuicio y parcialidad al denegar la solicitud de reconsideración para corregir unos alegados errores en su *Resolución*; y citar determinaciones que se encuentran bajo la consideración del Tribunal de Apelaciones.

Consta en el expediente que, Mapfre solicitó una sentencia sumaria parcial respecto a su reconvención, la cual reclamaba el reembolso de $10,885.00 que alegadamente pagó al señor Biase por los daños provocados por el señor Macdara. No obstante, el foro

primario denegó la solicitud de sentencia sumaria por considerar que existían controversias. En particular, entendió que había controversia en cuanto a si el señor Biase cobró el cheque efectuado por Mapfre y, si en efecto, Mapfre tiene derecho a subrogarse en el lugar del señor Biase.

Ante esto, puntualizamos que en la medida en que el recurso de epígrafe versa sobre la denegatoria de una moción de carácter dispositivo tenemos facultad en ley para atenderlo, a tenor con la Regla 52.1 de Procedimiento Civil, *supra*. Veamos.

Tras examinar con detenimiento el recurso de epígrafe, colegimos que no encontramos que el foro primario haya errado en la aplicación de la norma jurídica pertinente, de manera tal, que nos sea forzoso revocarle. Del expediente de este caso no surge que el foro primario haya actuado de manera arbitraria, caprichosa, en abuso de su discreción o mediante la comisión de algún error que justifique nuestra intervención para sustituir el criterio del foro primario. Por tanto, no existe criterio jurídico que amerite nuestra intervención con lo resuelto por el foro primario. Además, destacamos que no se configura ninguna de las circunstancias que justifican la expedición del auto bajo los fundamentos de la Regla 40 de nuestro Reglamento. En fin, no encontramos razones para expedir el auto y revisar la resolución recurrida.

No obstante, aclaramos que nuestra determinación no debe entenderse como una adjudicación en los méritos. Meramente dictaminamos que no se reúnen los criterios necesarios a los fines de que ejerzamos nuestra facultad revisora en esta etapa de los procedimientos, sino que amerita la continuación de los procedimientos para la celebración del juicio en su fondo. Una vez esto sea cumplido, la parte adversamente afectada podrá, de así entenderlo pertinente, presentar un recurso de apelación conforme

a su debido proceso de ley y, este Tribunal estará en posición de ejercer su revisión adecuadamente.

**-IV-**

Por los fundamentos previamente expuestos, se confirma la *Sentencia* apelada a través del recurso KLAN202400916. En cambio, se expide el auto de *Certiorari* solicitado mediante el recurso KLCE202401110 a los efectos de revocar la resolución recurrida y, así revocada, se desestima la causa de acción contra el señor Flaherty. Por otra parte, se deniega la expedición del auto de *Certiorari* solicitado a través del recurso KLCE202500318. En consecuencia, devolvemos el caso al foro primario para que continue los procedimientos según lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones